UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TOMMY SPENCER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:07-CV-00131 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Tommy Spencer appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.)  For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion.

### I.  PROCEDURAL HISTORY

Spencer applied for DIB and SSI in early 2004, alleging that he became disabled as of February 25, 2003. (Tr. 67-70.)  The Commissioner denied his application initially and upon reconsideration, and Spencer requested an administrative hearing. (Tr. 43-49.)  Two hearings were conducted by Administrative Law Judge (ALJ) Keith Varni, one on July 25, 2006, and the

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

other on December 1, 2006, at which Spencer (who was represented by counsel), his brother (at the first hearing only), and a vocational expert ("VE") testified. (Tr. 411-36.)

On December 20, 2006, the ALJ rendered an unfavorable decision to Spencer, concluding that he was not disabled despite the limitations caused by his impairments because he could perform his past relevant work as a warehouse manager. (Tr. 14-22.)  The Appeals Council later denied Spencer's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 7-10.)  Spencer filed a complaint with this Court on June 8, 2007, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II.  SPENCER'S ARGUMENTS

Spencer alleges three flaws with the Commissioner's final decision.  Specifically, Spencer claims that (1) the ALJ failed to evaluate or improperly evaluated the opinions of several physicians that assigned him limitations inconsistent with his RFC; (2) the ALJ improperly evaluated his past relevant work at step four and misunderstood the VE's testimony; and (3) the ALJ erred by determining that his testimony of debilitating limitations was "not fully credible." (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 18-25.)

## III.  FACTUAL BACKGROUND[2]

### *A.  Background*

At the time of the ALJ's decision, Spencer was fifty years old; had a high school education; and possessed work experience as an apartment manager, warehouse manager, and general laborer. (Tr. 67, 81, 110-11, 114, 421.)  Spencer contends that he became disabled as of

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 440-page administrative record necessary to the decision.

2

February 25, 2003, as a result of the following: herniated disks at C3-4 with upper extremity brachial neuritis, significant disk bulges at L3-4 and L4-5 associated with left lower extremity radiculitis, post traumatic stress disorder (PTSD), major depressive disorder, pain disorder associated with both psychological factors and a general medical condition, headaches, diabetes, hypertension, and a fatty liver. (Opening Br. 2.)

At the hearings, Spencer explained to the ALJ that two years earlier he had been electrocuted in an accident at work, which caused the onset of his impairments. (Tr. 428.)  He stated that he now walks with a cane due to problems with his left leg "pop[ping] out" and his balance; that he suffers from pain in his back, particularly with sitting; that he has to lie down often; that he drops things and has trouble lifting items because his legs and his arms go numb; and that he has frequent headaches. (Tr. 415-16, 428-30.)  He also stated that he experiences depression and anxiety and has difficulty with his concentration and memory. (Tr. 417-18, 428-30.)

*B.  Summary of the Relevant Medical Evidence*

In February 2003, Spencer was electrocuted at work, causing him to hit his head and back on the pavement. (Tr. 332.)  He was dazed by the accident and experienced pain in his neck, lower back, and left leg. (Tr. 332.)  He was evaluated at the hospital, given pain medication, and released. (Tr. 332.)

He was next seen at Bristol Park Medical Group for complaints of pain in his neck, low back, and left leg, as well as numbness in his left arm. (Tr. 271.)  MRI scans of his neck and low back showed abnormalities. (Tr. 271.)  He was treated with low back injections, medication, and physical therapy; he was also prescribed medication for hypertension. (Tr. 271.)

3

Dr. Westerband then evaluated Spencer, prescribed him medication, and referred him to a chiropractor, who treated him for six weeks with little reported relief. (Tr. 332.) MRI scans of Spencer's neck and low back revealed some disk damage. (Tr. 332.) He then saw a pain management specialist and received three injections in his lower back, which also did little to relieve his pain. (Tr. 332.)

In September 2003, Dr. Michael Einbund, an orthopaedic surgeon, examined Spencer for his various complaints. (Tr. 270-77.) Dr. Einbund noted that Spencer ambulated with a limping gait and used a cane, that his straight leg raising test was positive, and that his sensation in his left lower extremity was decreased; otherwise, his exam was normal. (Tr. 273-75.) He assigned Spencer a diagnosis of cephalgia and cervical and lumbosacral spine strain, prescribed medication, and kept him off work for the next month. (Tr. 275.) One month later, Spencer reported the same symptoms, and Dr. Einbund continued to keep him off work. (Tr. 260-62.) Electrical diagnostic studies of his upper extremities were normal. (Tr. 261.)

On November 7, 2003, Spencer was evaluated by Dr. Maria Ruby Leynes for his hypertension. (Tr. 196-201.) In December 2003, she noted that his hypertension was "fairly controlled" but that he continued to feel anxious and depressed; she recommended a psychiatric consultation. (Tr. 194.) One week later, Dr. Einbund also recommended that Spencer see a psychiatrist. (Tr. 258.)

In January 2004, Spencer was evaluated by Dr. Diane DeSilva, a psychiatrist. (Tr. 216-24.) She diagnosed him with a major depressive disorder and a pain disorder associated with both psychological factors and a general medical condition; assigned him a Global Assessment

4

of Functioning (GAF) score of 45;[3] started regular treatment with him; and opined that he was temporarily disabled on a psychiatric basis since February 2003. (Tr. 219, 223.)

Spencer was seen by Dr. Leynes in the spring and summer of 2004 to monitor his hypertension. (Tr. 179-88.) In July 2004, she also diagnosed him with diabetes, new onset, and stated that he should not be exposed to more than usual levels of emotional stress or heavy lifting because they could compound his hypertension and diabetes. (Tr. 181.)

In August 2004, Spencer returned to Dr. DeSilva for a final psychiatric evaluation. (Tr. 205-12.) She assigned a diagnosis of major depressive disorder, single episode, and pain disorder associated with both psychological factors and a general medical condition, rating his GAF at 50.[4] (Tr. 208.) She found Spencer to be characteristically anxious, moody, and preoccupied with a variety of physical fears and complaints, which was suggestive of a somatoform disorder. (Tr. 209.) With respect to Spencer's work capacity, Dr. DeSilva found a light to moderate impairment in his ability to perform complex or varied tasks; relate to other people beyond giving and receiving instructions; influence people; make generalizations, evaluations, or decisions without immediate supervision; and to accept and carry out responsibility for direction, control, and planning. (Tr. 212.) She found a slight or very slight level of impairment in his ability to comprehend problems and follow instructions, perform

---

[3] A GAF score is a clinician's judgment of an individual's overall level of psychological, social, and occupational functioning on a hypothetical continuum of mental health illness; the GAF excludes any physical or environmental limitations. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000). A GAF score of 45 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep job). *Id.*

[4] A GAF score of 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep job). American Psychiatric Association, *supra* note 3, at 34.

5

simple and repetitive tasks, and maintain a work pace appropriate to a given workload. (Tr. 212.) Dr. DeSilva opined that Spencer was unable to return to his last job due to fearfulness and reduced stress tolerance. (Tr. 211.)

On September 17, 2004, Spencer visited Dr. Thomas Jackson, an orthopaedic surgeon, for an evaluation of his lower back, neck, and left leg pain. (Tr. 311-32.) Upon physical examination, Spencer was unable to perform heel and toe walk, had moderate tenderness over his cervical spine and severe tenderness in his low back, had decreased sensation in his right hand, and tended to limp severely to his right side. (Tr. 329-30.) Dr. Jackson thought Spencer had poor pain tolerance and that he was a gross symptom magnifier. (Tr. 318.) Nonetheless, he limited Spencer from heavy lifting and heavy pulling; repetitive movements in flexion, extension, and rotation or lateral bending of his neck; and from holding his neck in a fixed position on a repetitive basis. (Tr. 316.) He also found that Spencer could not return to his past work as a warehouse manager. (Tr. 314-15.)

In September 2004, Dr. Tashgion, a state agency psychiatrist, reviewed Spencer's medical record and concluded that he had a depressive disorder that caused moderate limitations in his ability to maintain social functioning, get along with co-workers, or interact appropriately with the public; maintain concentration, persistence, or pace; understand, remember, or carry out detailed instructions; complete a normal workweek without interruptions from psychologically-based symptoms; and accept instructions and respond appropriately to criticism from supervisors. 225-42.) He did state, however, that Spencer was able to understand, remember, and carry out three-step commands with simple instructions and minimal social contact. (Tr. 241.) A second state agency psychiatrist later affirmed Dr. Tashgion's opinion. (Tr. 225.)

6

That same month, Spencer visited Dr. Einbund for a final comprehensive evaluation. (Tr. 372-82.)  Dr. Einbund opined that Spencer's condition was now "permanent and stationary" and limited him to light work, stating that he has a "residual disability," "requires work restrictions," and could not return to his prior occupation. (Tr. 377, 381.)

On October 22, 2004, Dr. E. Padilla, a state agency physician, reviewed Spencer's record and completed a physical residual functional capacity assessment. (Tr. 278-85.)  He stated that Spencer could lift or carry up to fifty pounds occasionally and twenty-five pounds frequently; stand or walk at least four hours in an eight-hour workday with the use of a cane; sit for six hours in an eight-hour workday with the need to alternate between sitting and standing every two hours; and occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 278-85.)  He also stated that Spencer has a limited ability to push or pull with the lower extremities. (Tr. 278-85.)  A second state agency physician, Dr. Thu N. Do, later affirmed Dr. Padilla's opinion. (Tr. 285.)

In March 2006, Spencer was evaluated by Dr. V. Hernandez and Dottie Fuentes, a mental health counselor, at Park Center due to experiencing increasingly depressive symptoms. (Tr. 387-89.)  Spencer was diagnosed with a depressive disorder and a psychotic disorder, and assigned a GAF score of 40.[5] (Tr. 388.)  One month later, Spencer was re-evaluated at Park Center by Dr. Nilda Salazar; she diagnosed him with a major depressive disorder and PTSD and assigned him a GAF of 60, noting that he seemed to be doing fairly well with his medication.[6]

---

[5] A GAF score of 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed person avoids friends, neglects family, and is unable to work). American Psychiatric Association, *supra* note 3, at 34.

[6] A GAF score of 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). American Psychiatric Association, *supra* note 3, at 34.

7

(Tr. 385-86.)  Spencer continued to receive Park Center's services during the next several months. (Tr. 384.)

On September 1, 2006, Spencer underwent a consultative psychiatric examination by Dr. Jobst Singer. (Tr. 395-401.)  Dr. Singer found that Spencer's ability to understand, remember, or perform instructions was unimpaired for simple tasks and mildly impaired for complex tasks, and that his physical problems and related anxiety could significantly interfere with his ability to complete a normal workday. (Tr. 398.)  He further opined that Spencer had slight limitations in his ability to make judgments in simple work-related decisions, and slight to moderate limitations in his ability to respond appropriately to work pressures and work changes and to interact appropriately with the public, supervisors, or co-workers. (Tr. 400.)

That same month, Spencer underwent a consultative physical exam by Dr. Juliane Tran. (Tr. 402-10.)  He concluded that Spencer could lift no more than fifty pounds frequently and twenty-five pounds occasionally; stand and walk for no more than six hours in an eight-hour workday; had no sitting restrictions; could bend, stoop, kneel, and crouch frequently; and did not need a cane to ambulate. (Tr. 404.)  Yet, in a second report, Dr. Tran reported that Spencer could kneel, crouch, crawl, and stoop only occasionally, but that he could climb and balance frequently. (Tr. 408.)

## IV.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are

8

supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## V.  ANALYSIS

### A.  The Law

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently

unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[7] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B.  The ALJ's Decision

On November 16, 2006, the ALJ rendered his opinion. (Tr. 14-22.) He found at step one of the five-step analysis that Spencer had not engaged in substantial gainful activity since his alleged onset date and at step two that Spencer's back disorder and depressive disorder were severe impairments. (Tr. 16.) At step three, he determined that Spencer's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 17.) Before proceeding to step four, the ALJ determined that Spencer's testimony of debilitating limitations was "not fully credible" and that he had the following RFC:

> [T]he claimant has the residual functional capacity to perform work at a medium exertional level with the following limitations: The claimant can occasionally lift and/or carry 50 pounds and frequently 25 pounds; within an eight-hour workday,

---

[7] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

10

>stand and/or walk for about six hours.  The claimant can frequently engage in
>bending, stooping, kneeling, or crouching.  Additionally, the claimant can engage
>in routine and repetitive, entry level, minimally stressful work, requiring no
>contact with the general public, and only superficial interpersonal contact with
>coworkers and supervisors.

(Tr. 17-18.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Spencer was capable of performing his past relevant work as a warehouse manager. (Tr. 21.)  Therefore, Spencer's claim for DIB and SSI was denied. (Tr. 21.)

### C.  The ALJ Erred by Failing to Properly Consider the Medical Source Opinions of Record

Spencer argues that the ALJ failed to evaluate or improperly evaluated the opinions of several physicians that assigned him limitations that were inconsistent with the RFC assigned by the ALJ.  Spencer's argument has merit.

### 1.  Dr. Padillo and Dr. Do, the State Agency Physicians

The Commissioner must "evaluate every medical opinion [it] receive[s]." 20 C.F.R. §§ 404.1527(d), 416.927(d).  Each medical opinion, other than a treating physician's opinion entitled to controlling weight, must be evaluated pursuant to factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) to determine the proper weight to apply to it. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p; *see also Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Earnest v. Astrue*, No. 1:06-cv-714-JDT-TAB, 2007 WL 2904067, at *11 n.4 (S.D. Ind. Sept. 29, 2007); *Windus v. Barnhart*, 345 F. Supp. 2d 928, 939-43 (E.D. Wis. 2004).

Dr. Padilla and Dr. Do, the state agency physicians, assigned Spencer various limitations that were inconsistent with the RFC ultimately assigned by the ALJ and the ALJ's conclusion that Spencer could perform his past relevant work, including that Spencer could stand or walk

only four hours in an eight-hour workday, using a cane for support; must alternate between sitting and standing every two hours; has a limited ability to push or pull with the lower extremities; and could only occasionally climb, balance, stoop, kneel, crouch, and crawl.  Yet, the ALJ never mentioned the opinion of these state agency physicians in his decision.

In an effort to explain away this omission, the Commissioner suggests *post hoc* that the ALJ chose to rely on the opinions of Dr. Tran and Dr. Singer because they were more recent than the opinion of the state agency physicians, who "may have evaluated [Spencer] earlier in the process." (Def.'s Mem. in Supp. of the Commissioner's Decision ("Resp. Br.") 9.)  While the Commissioner's contention may well be accurate, "[t]he . . . problem with this argument is that the ALJ did not make it. '[P]rinciples of administrative law require the ALJ to rationally articulate the grounds for [his] decision and confine [judicial] review to the reasons supplied by the ALJ.'" *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1059 (E.D. Wis. Mar. 26, 2005) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

An ALJ must not ignore evidence which contradicts his opinion but must evaluate the record fairly. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (stating that "the ALJ's decision must be based upon consideration of all the relevant evidence, and that the ALJ must articulate at some minimal level his analysis of the evidence") (quotation marks and citation omitted).  When probative evidence is left unmentioned by the ALJ, the Court is left to wonder whether it was even considered. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003); *see Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (stating that the ALJ's failure to discuss a physician's report "in its entirety prevents [the] court from tracking the ALJ's reasons for discounting it").  The ALJ's

failure to address the opinion of these state agency physicians, which is inconsistent with the ALJ's conclusion that Spencer could perform his past relevant work and the opinion of Dr. Tran upon which the ALJ ultimately relied (*see* Tr. 19), must be remedied through a remand.

    2.  Dr. Einbund, Spencer's Treating Orthopaedic Specialist

Spencer also argues that the ALJ erred by failing to properly evaluate the opinion of Dr. Einbund, his treating orthopaedic specialist for his 2003 injury on the job.

The Seventh Circuit has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, this principle is not absolute, as "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002).

In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Books*, 91 F.3d at 979.  The Commissioner must always give good reasons for the weight ultimately applied to the treating

13

source's opinion. *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

  Here, in contrast to the RFC that the ALJ assigned, Dr. Einbund opined that Spencer could perform light work and that he could do tasks in a standing or walking position that incorporated only minimal demand for physical effort. (Tr. 377.)  Dr. Einbund further stated that Spencer required a cane to ambulate and that he could not perform his usual and customary occupation. (Tr. 377, 381.)  Significantly, Dr. Einbund referred to these limitations and Spencer's condition as "permanent and stationary." (Tr. 377.)  Yet, the ALJ never discussed Dr. Einbund's opinion in his determination; instead, he summarily discarded the opinion, as well as the opinions of other medical sources relating to Spencer's work injury, by stating: "I also assign little weight to the medical reports generated by paid consultants relative to the claimant's worker's compensation litigation . . . ." (Tr. 20.)

  In doing so, the ALJ erred, as his cursory statement does not adequately explain why he declined to assign Dr. Einbund's opinion controlling weight. *See Skarbek v. Barnhart,* 390 F.3d 500, 503-04 (7th Cir. 2004) (stating that an ALJ may discount a treating physician's opinion if it is not well-supported by medical findings or is inconsistent with substantial evidence of record, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability); *Herron*, 19 F.3d at 333; *see generally Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (stating that an ALJ must sufficiently articulate the ALJ's assessment of the evidence to assure that the important evidence has been considered and that the ALJ's path of reasoning can be traced); *McGraw v. Apfel*, 87 F. Supp. 2d 845, 856 (N.D. Ind. 1999).  Then, after the ALJ concluded that Dr. Einbund's opinion did not merit controlling weight, he further erred by failing to minimally articulate his reasoning as to why he assigned it "little weight."

14

As explained *supra*, when a treating physician's opinion is found to be inconsistent with other evidence in the record and thus not entitled to controlling weight, it is still entitled to deference and must be weighed using all the factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d). *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Instead, here the ALJ simply dismissed Dr. Einbund's opinion, never discussing (1) that Dr. Einbund was one of Spencer's treating physicians; (2) that Dr. Einbund was a specialist in orthopaedics; (3) the length of Spencer's treatment relationship with Dr. Einbund and the frequency of examination; or (4) the nature and extent of the treatment relationship. *See generally Books*, 91 F.3d at 979 (articulating that when conflicting medical evidence exists, the ALJ must consider the factors articulated in 20 C.F.R. § 404.1527); *Rohan*, 98 F.3d at 971.

As with the state agency physicians' opinions, the Commissioner argues *post hoc* that the ALJ chose to rely on the more recent medical opinions of Dr. Tran and Dr. Singer, rather than Dr. Einbund's opinion. (Resp. Br. 9.)  Again, "[t]he . . . problem with this argument is that the ALJ did not make it." *Blom*, 363 F. Supp. 2d at 1059 (quoting *Steele*, 290 F.3d at 941).  The Court must confine its review to the reasons the ALJ articulated, which in this case are inadequate. *Id*.

Consequently, the Commissioner's final decision will be remanded so that the ALJ may properly consider the medical source opinions of record in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and adequately articulate his analysis of this evidence.[8]

---

[8] Spencer also contends that the ALJ failed to properly evaluate the opinion of Dr. Singer, even though the ALJ did discuss this opinion at length (Tr. 19); specifically, Spencer asserts that the ALJ omitted from his discussion a portion of Dr. Singer's opinion that did not favor the ALJ's conclusion. (*See* Opening Br. 25.)  While a written evaluation of every piece of evidence is not required, *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995), the ALJ is encouraged to re-examine Dr. Singer's opinion upon remand to "assure[] that the ALJ considered the important evidence." *Id.*

*D.  The ALJ's Step Four Finding Must Be Remedied Upon Remand*

Spencer also argues that the ALJ's determination at step four that he could perform his past relevant work as a warehouse manager is not supported by substantial evidence.  Spencer's contention is correct.

At the hearing, the VE testified that Spencer's past job as a warehouse manager was semi-skilled, medium work and that a hypothetical individual with Spencer's age, education, experience, and RFC could not perform this job. (Tr. 421-22.)  Yet, despite the VE's testimony, the ALJ concluded that Spencer could return to his job as a warehouse manager. (Tr. 21.)  Obviously, the ALJ's step four finding is not supported by substantial evidence.

In fact, the Commissioner admits that the ALJ's step four finding is unsupported. (*See* Resp. Br. 9.)  However, the Commissioner argues that the error is ultimately harmless because the VE further testified at the hearing that a hypothetical individual with Spencer's age, education, experience, and RFC could perform 10,000 other jobs in the regional economy. (Resp. Br. 9-10.)

Specifically, the VE testified:

Q      Is there any kind of unskilled work that might be performed within this entire constellation of capacities and limits?

A      Yes, there'd be other jobs such as cleaners.  There'd also be housekeeper type of positions.  There'd be machine packagers in the medium range.  There'd also be various types of assemblers in the medium range.

Q      What's the number of those jobs in the regional economy . . . ?

A      In the aggregate, in the broad regional economy, well in excess of 10,000.

(Tr. 422-23.)  As the Commissioner's argument goes, the ALJ "could find that this [10,000 jobs] is a significant number of jobs." (Resp. Br. 9.)

16

The Commissioner's argument is inadequate in this instance.  Social Security Ruling 83-14 instructs:

> Whenever a vocational resource is used and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) the statement of the incidence of such work in the region in which the individual resides or in several regions of the country.

Here, because the ALJ concluded his decision at step four, he never proceeded to step five, where he must, in accordance with Social Security Ruling 83-14, cite examples of jobs that Spencer could actually perform based on his age, education, work experience, and RFC, and the incidence of such jobs in the regional economy. *See generally Prince v. Sullivan*, 933 F.2d 598, 602-03 (7th Cir. 1991) (emphasizing that Social Security rulings are binding on the Social Security Administration and finding that the ALJ's failure to follow a Social Security ruling constitutes legal error).

Though the VE did summarily articulate examples of jobs that a hypothetical individual with Spencer's age, education, work experience, and limitations could perform and that at least 10,000 of these jobs are available in the regional economy, this testimony fails to fill the ALJ's step-five gap in this instance.  This is because the ALJ failed to follow Social Security Ruling 00-4p and never inquired whether the VE's testimony about such jobs was consistent with the Dictionary of Occupational Titles (DOT).  Social Security Ruling 00-4p states that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." *See also Prochaska v. Barnhart*, 454 F.3d 731, 735-36 (7th Cir. 2007) (emphasizing that Social Security Ruling 00-4p places the burden of making the

17

necessary inquiry regarding any possible conflicts on the ALJ, *not* the claimant); *Baxter v. Astrue*, No. 1:06-cv-1735-RLY-WTL, 2008 WL 222291, at *3 (S.D. Ind. Jan. 25, 2008) (remanding decision where the ALJ failed to inquire whether the VE's testimony conflicted with the DOT).  Due to this omission, the VE's testimony cannot remedy the ALJ's decision to forego making step five findings.[9]

In sum, the ALJ's conclusion at step four that Spencer can perform his past relevant work as a warehouse manager is contrary to the VE's testimony and thus is not supported by substantial evidence.  Furthermore, contrary to the Commissioner's assertion, the testimony of the VE is insufficient to remedy the ALJ's failure to articulate a step five finding in this instance.  Therefore, the Commissioner's final decision will be remanded so that the ALJ can make a proper step four finding and, if necessary, a step five finding, articulating what jobs in the economy, if any, Spencer can perform despite his impairments.[10]

## VI.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this

---

[9] The Commissioner fails to advance an argument of harmless error in connection with the VE's somewhat vague testimony that suggested Spencer could perform his past relevant work as a general laborer not as he performed it, but solely at the medium exertional level. (*See* Tr. 421-22.)  Considering that the VE's testimony was somewhat unclear with respect to the general laborer work, that the ALJ based his step four determination solely on Spencer's ability to perform his past relevant work as a warehouse manager and never mentioned the general laborer position, and that the Commissioner did not advance any argument in connection with such testimony, the Court is reluctant to affirm the ALJ's step four finding solely on the VE's testimony concerning the general laborer work.

[10] Because a remand is warranted on other grounds, the Court need not reach Spencer's remaining argument – that the ALJ improperly evaluated the credibility of his testimony of debilitating limitations.

Opinion.  The Clerk is directed to enter a judgment in favor of Spencer and against the

Commissioner.

> SO ORDERED.

> Enter for this 22nd day of April, 2008.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
